# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRYAN TIMOTHYLEENARD
SMITH,

      Petitioner,

v.                          **CASE NO:**   **8:08-CV-1086-T-23AEP**
                                                  **8:05-CR-0527-T-23MAP**

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court by referral from the Honorable Steven D. Merryday for a Report and Recommendation (Dkt. No. 12) on Bryan Timothyleenard Smith's ("Mr. Smith") Motion Pursuant to 28 U.S.C. §2255 to Vacate Conviction and Sentence ("Motion to Vacate") (Dkt. No. 1).[1] The United States filed a response in opposition to the Motion to Vacate (Dkt. No. 7), and both parties filed, with the Court's permission, supplemental memoranda (Dkt. Nos. 16, 18). The matter was referred "to both conduct an evidentiary hearing and file a report recommending a ruling on the remainder of [Mr.] Smith's motion to vacate. " (Dkt. No. 12 at 11.) The parties appeared before the Court on September 14, 2011 for an evidentiary hearing. Based upon the evidence presented, the undersigned finds that Mr. Smith's counsel did not render ineffective assistance of counsel, and therefore, I recommend that Mr. Smith's Motion to Vacate (Dkt. No. 1) be denied.

---

[1] All references to the docket entries are to Case No. 8:08-CV-1086-T-23AEP unless otherwise specified.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In November and December 2005, several robberies occurred at four stores in Polk County, Florida, in which the assailants wore bandanas, sweatshirts, and gloves. These robberies occurred at the Speedy Food Mart in Winter Haven, Florida ("Speedy Food Mart"), the Island Food Store in Haines City, Florida ("Island Food Store"), Intercession City Circle K ("Circle K"), and Bill's Market. In several of the store robberies a gun was fired, and during one of the robberies a cashier died from a gun shot wound. On the evening of December 2, 2005, Polk County police pulled over a white Chevy Cavalier traveling in excess of the posted speed limit. Upon searching the vehicle, which had been driven by Jamail Hogan ("Mr. Hogan"), Mr. Smith's brother, police discovered weapons, bandanas, gloves, and other evidence matching the description of evidence used in the course of the robberies. As a result, the car was impounded and Mr. Hogan was arrested and brought in for questioning. At some point during Mr. Hogan's questioning, Mr. Smith arrived at the police station. Mr. Smith was interviewed at the police station by Seargant Edwin Moran ("Detective Moran")[2] of the Polk County Sheriff's Office.

Subsequently, on December 14, 2005, Mr. Smith and Mr. Hogan were charged in a mutli-count indictment in Case No. 8:05-CR-527-T-23MAP for multiple offenses related to the store robberies. (*See* Case No. 8:05-CR-527-T-23MAP, Dkt. No. 1.) Mr. Smith first appeared before the Court on December 19, 2005, and was represented by retained counsel, Lawrence Shearer. (*Id.*, Dkt. No. 6.) On January 4, 2006, Mr. Smith entered a plea of not guilty to all charges in the indictment, and the Court appointed Thomas Ostrander ("Mr. Ostrander") to represent Mr. Smith.

---

[2] During the relevant time periods, Seargant Moran held the position of detective and therefore will be identified as Detective Moran herein.

(*Id.*, Dkt. No. 22.)  On February 22, 2006, Mr. Smith was charged in Counts One through Twelve in a Superseding Indictment.  (*Id.*, Dkt. No. 36.)  After a May 2006 trial, the jury found Mr. Smith guilty of one count (Count 1) of conspiracy to obstruct commerce by robbery (18 U.S.C. § 1951), two counts (Counts 6 and 9) of obstruction of commerce by robbery (18 U.S.C. §§ 1951, 2), two counts (Counts 7 and 12) of discharging a firearm during and in relation to a crime of violence (18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(iii)), one count (Count 10) of brandishing a firearm during and in relation to a crime of violence (18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(ii)), and one count (Count 11) of attempted obstruction of commerce by robbery (18 U.S.C. §§ 1951, 2).  (Case No. 8:05-CR-527-T-23MAP, Dkt. Nos. 81, 82.)  The jury found Mr. Smith not guilty of Counts Two through Five, which were charges related to a car jacking on November 26, 2005, and the robbery of the Speedy Food Mart on that same date.  (*Id.*)  Count Eight was eventually dismissed by the United States.  (*Id.*)  On August 31, 2006, the Court sentenced Mr. Smith to 1,680 months imprisonment.  (*Id.*, Dkt. No. 114.)

On June 4, 2008, Mr. Smith filed his Motion to Vacate arguing a variety of reasons why defense counsel allegedly rendered ineffective assistance, and thereby providing a basis for overturning his conviction. On July 20, 2011, the Honorable Steven D. Merryday entered an order rejecting all of Mr. Smith's allegations in his Motion to Vacate "except his claims that counsel rendered ineffective assistance by not (1) moving to suppress Smith's statements and (2) investigating Smith's alibi claim." (Dkt. No. 12 at 11.) On September 14, 2011, the undersigned conducted an evidentiary hearing on Mr. Smith's two remaining allegations.  During the evidentiary hearing, Mr. Smith testified on his own behalf and called his mother, Lucresha Hogan,

3

("Ms. Hogan") as a witness. The Government called as witnesses Detective Moran and Mr. Ostrander. The testimony at the evidentiary hearing established the following.

## A.     Mr. Smith's Witnesses

Mr. Smith testified that at some time during the early morning hours after Mr. Hogan's arrest, law enforcement called Mr. Smith and requested that he come to the police station to pick up his car. Mr. Smith asserted that when he arrived at the police station to pick up the car he was placed in a room by himself for a period of time, during which he fell asleep. Mr. Smith stated that when he woke up there were approximately eight police officers in the room with him, to specifically including Detective Moran. Mr. Smith indicated that Detective Moran immediately began questioning him about the store robberies. Mr. Smith acknowledged that he answered some of Detective Moran's questions, but when Detective Moran began confronting Mr. Smith with certain items of evidentiary value, Mr. Smith requested to speak with an attorney. Specifically, Mr. Smith testified that he had a card (Petitioner Ex. No. 2) in his wallet for a pre-paid legal service, and that he pulled out the card from his wallet during Detective Moran's questioning and requested to call the attorney. Mr. Smith indicated that when he requested to call the attorney from the pre-paid legal service, Detective Moran denied his request and threatened Mr. Smith by telling him that if he called the attorney and the police later found out that he had information pertaining to the store robberies, Detective Moran would make sure that Mr. Smith would go to jail for at least five years for withholding information. Mr. Smith stated that after Detective Moran denied him the phone call to the attorney, he continued to answer Detective Moran's questions and eventually signed a *Miranda* waiver form. However, Mr. Smith specifically testified that his statements, as reported by Detective Moran, were inaccurate. Notably, Mr. Smith testified that

4

although he admitted to driving Mr. Hogan to Bill's Market, he expressly denied driving Mr. Hogan or anyone else to any of the other stores.

Regarding his contact with Mr. Ostrander, Mr. Smith testified that he met/spoke with Mr. Ostrander during the following occasions: (1) the initial meeting at the federal courthouse when Mr. Ostrander was appointed to his case; (2) at the Pasco County Jail soon after the initial meeting; (3) a telephone conversation while Mr. Smith was still at the Pasco County Jail; (4) at the Hillsborough County Jail approximately two months after the initial meeting; (5) approximately one week before trial at the Hillsborough County Jail; and (6) in the Marshal's holding cell at the federal courthouse on the morning before trial. In essence, Mr. Smith asserted that during all of his meetings with Mr. Ostrander, the discussion focused more on what sentence Mr. Smith would get if he entered a plea rather than the facts of the case. Mr. Smith claimed that the only time Mr. Ostrander ever substantively discussed the facts of the case with Mr. Smith occurred during their first meeting at the Hillsborough County Jail. Mr. Smith specifically testified that during this meeting he discussed with Mr. Ostrander his alleged statement to Detective Moran, and told Mr. Ostrander that during Detective Moran's questioning he requested to call an attorney and Detective Moran denied his request. Further, Mr. Smith asserted that he told Mr. Ostrander that he believed that he was at his grandmother's house during one of the robberies. Mr. Smith further asserted that during one of his meetings with Mr. Ostrander, he asked Mr. Ostrander about filing a pre-trial motion.

Mr. Smith also testified that he told his mother that he requested to call an attorney during Detective Moran's questioning, and that Detective Moran wouldn't let him call an attorney. Lastly, during cross-examination, Mr. Smith acknowledged that he was convicted by the State of

Florida after a November 2008 trial for the attempted robbery of Bill's Market. Mr. Smith specifically acknowledged that his statements to Detective Moran, which are at issue in this case, were also used against him in the state trial. Further, Mr. Smith agreed that his lawyer in the state trial did not seek to suppress Mr. Smith's statements from evidence in the state case.

Ms. Hogan testified that she is Mr. Smith's mother, and that during the time period of Mr. Smith's arrest she was employed as a detention deputy for the Polk County Sheriff's Office. In essence, Ms. Hogan testified that after talking with her son following his arrest, she met with Mr. Ostrander and informed Mr. Ostrander that: (1) Mr. Smith specifically requested to call an attorney during Detective Moran's questioning but that Mr. Smith's request was denied, and (2) Mr. Smith might have had an alibi for some of the robberies, including that Mr. Smith might have been with either a relative or his friend Loraine Richardson during one of the store robberies. Ms. Hogan acknowledged that Mr. Smith admitted to her that he drove Mr. Hogan to Bill's Market. However, during cross examination, Ms. Hogan stated that she could not recall whether Mr. Smith told her if he did or did not drive Mr. Hogan to the Circle K, Speedy Food Mart, or Island Food Store.

## B.    The United States's Witnesses

Detective Moran testified that he was the lead detective initially on the Bill's Market robbery, and eventually on all of the store robberies. Detective Moran stated that he was an active participant during the interview of Mr. Hogan after his arrest. Detective Moran noted that during Mr. Hogan's interview, he was informed that Mr. Smith was at the police station. Detective Moran could not explain whether an officer called Mr. Smith and told him to come pick up his car at the police station, or whether Mr. Smith called Mr. Hogan's cell phone and an officer answered the phone. Regardless, Detective Moran testified that at approximately 2:47 a.m., on December

3, 2005, he made initial contact with Mr. Smith. Detective Moran indicated that he initially met

with Mr. Smith and had Mr. Smith moved to a conference room for questioning. Detective Moran

testified that at approximately 3:20 a.m., Detective Moran read Mr. Smith his *Miranda* rights and

Mr. Smith signed a written waiver of his *Miranda* rights, after which questioning commenced.

In essence, Detective Moran testified that during the interview, Mr. Smith admitted to driving Mr.

Hogan and other individuals to the store sites of the robberies but denied that he knew that his

brother and the other individuals were committing robberies at those locations.[3] Detective Moran

asserted that at approximately 5:25 a.m., Mr. Smith stated that he had told Detective Moran all that

he knew and asked if he could go home. Detective Moran further stated that informed Mr. Smith

that he could not leave, at which time Mr. Smith requested to speak to an attorney. Detective

Moran testified that the interview was terminated upon Mr. Smith's request to speak to an

attorney.

Mr. Ostrander testified that he met with Mr. Smith approximately six times prior to trial.

Mr. Ostrander stated that at no point in any of his meetings or discussions with Mr. Smith did Mr.

Smith (or Ms. Hogan) inform him that Mr. Smith requested to speak with an attorney during

---

[3] Government Exhibit No. 1 is a transcript of Detective Moran's trial testimony. In his trial testimony, Detective Moran provided a more detailed account of Mr. Smith's alleged statement, including the following: (1) that after Mr. Smith eventually admitted that he had driven Mr. Hogan and another man to Bill's Market, Mr. Smith also acknowledged that he stood next to the vehicle while Mr. Hogan and the other man went into the store; (2) that Mr. Hogan and the other man subsequently came running out of the store and jumped into the car; (3) that Mr. Smith claimed that he did not realize anything was wrong until one of the store employees came running out of the store; (4) that Mr. Smith also admitted that he drove Mr. Hogan and another man to the Speedy Food Mart on November 26th, and that on November 27th he drove them to the Circle K and the Island Foods Store; and (5) that Mr. Smith specifically claimed that he had not participated in any of the robberies, and that during all of the armed robberies, he had remained in the car and had no knowledge that the robberies were taking place.

Detective Moran's interview, but was denied the opportunity to do so. Conversely, Mr. Ostrander testified that Mr. Smith acknowledged to him that he was given his *Miranda* warnings prior to answering law enforcement questions. Mr. Ostrander specifically testified that he would have absolutely pursued a motion to suppress had Mr. Smith or Ms. Hogan advised him that Mr. Smith was denied the opportunity to speak with an attorney upon Mr. Smith's request. Also, Mr. Ostrander testified that Mr. Smith told him on multiple occasions that he drove Mr. Hogan to the various stores in question, but that he did not know anything about the store robberies. In this regard, Mr. Ostrander further testified that he provided Mr. Smith with a copy of Detective Moran's report documenting Mr. Smith's statements (as well as a copy of all the other discovery provided by the government) and told Mr. Smith to review it and let him know if any inaccuracies existed in the statement as reported by Detective Moran. Mr. Ostrander stated that Mr. Smith did not claim any inaccuracies with the report. Rather, Mr. Ostrander testified that Detective Moran's report was entirely consistent with Mr. Smith's statements about the events to Mr. Ostrander. When questioned about whether Mr. Smith or Ms. Hogan told him about a potential alibi witness, Mr. Ostrander asserted that no one informed him about an alibi witness. Mr. Ostrander further reiterated that Mr. Smith was always consistent in that he drove Mr. Hogan to each of the stores, but had no knowledge regarding the robberies. Mr. Ostrander indicated that the defense theory at trial was therefore based upon Mr. Smith's assertion that he drove to each of the stores, but did not know that Mr. Hogan and others were going to rob the stores and thus was not in any way culpable for the crimes as charged.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

To prove his claim that counsel provided ineffective assistance, Mr. Smith must satisfy the

two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Eleventh

Circuit has described the test as follows:

> [F]irst, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). With regard to the performance

component of *Strickland*, a petitioner must provide factual support for the contentions that

counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07

(11th Cir.1987). "The petitioner's burden to prove, by a preponderance of the evidence, that

counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285,

1293 (11th Cir.2006). To show counsel's performance was unreasonable, a petitioner must

establish that "no competent counsel would have taken the action that his counsel did take."

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir.2001) (emphasis omitted). A court must

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. *Strickland*, 466 U.S. at 689-90. A court must "judge the reasonableness

of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

As stated by Judge Merryday in the referring order:

> Smith faults counsel for not moving to suppress Smith's statements
> to Detective Moran. According to Detective Moran's testimony,
> Smith waived his right to remain silent, signed a Miranda waiver,

and voluntarily talked. Smith now claims that he advised trial counsel that the officers coerced him into admitting his involvement. Smith also faults trial counsel for not investigating certain alibi witnesses. An evidentiary hearing is necessary to determine what Smith advised his counsel.

(Dkt. No. 12 at 11.)

Thus, as framed, the sole issue before the Court is whether Mr. Ostrander rendered ineffective assistance of counsel by either failing to pursue a motion to suppress Mr. Smith's statements or by failing to investigate Mr. Smith's claimed alibi witnesses. As Judge Merryday expressly noted, this issue is entirely dependent upon what Mr. Smith did or did not advise Mr. Ostrander to do. Therefore, the issue is essentially contingent upon a credibility determination by the Court between Mr. Smith and Mr. Ostrander. In other words, it is not necessary for the Court to decide whether in fact Detective Moran denied Mr. Smith's request to speak to an attorney during questioning or whether Detective Moran falsely documented that Mr. Smith admitted to driving Mr. Hogan to all of the alleged stores. Rather, the Court must only determine whether Mr. Smith communicated to Mr. Ostrander that: (1) Mr. Smith requested an attorney during Detective Moran's questioning, (2) Detective Moran falsely reported that Mr. Smith admitted that he drove to all of the alleged stores, or (3) Mr. Smith had at least one alibi witness. However, while the core issue before the Court focuses on what Mr. Smith communicated to Mr. Ostrander, and not Detective Moran's conduct, the Court finds that Mr. Smith's claims about Detective Moran's conduct in taking and reporting Mr. Smith's statement are entirely relevant in consideration of the second *Strickland* prong, as well as in consideration of Mr. Smith's credibility.

Certainly, if Mr. Smith's testimony and other evidence was accepted by the Court, that evidence would be sufficient to warrant the granting of his Motion to Vacate. However, I cannot

accept Mr. Smith's testimony and evidence because I find it not credible for several reasons. Notably, I find Mr. Smith's testimony wholly incredible, and completely contradictory to the independent evidence, as well as Detective Moran's and Mr. Ostrander's testimony. Mr. Smith's allegations are not just simply that Mr. Ostrander failed to provide effective assistance of counsel. Rather, the tenure of Mr. Smith's allegations are that Mr. Ostrander was, in essence, complicit in Mr. Smith's conviction, given that Mr. Smith claims he told Mr. Ostrander prior to his trial that he was denied the opportunity to speak with an attorney during Detective Moran's questioning, that Detective Moran threatened him in order to give a statement, and that Detective Moran was lying in his report about Mr. Smith's admissions. In other words, Mr. Smith is asserting that Mr. Ostrander not only completely ignored Mr. Smith's claims, but that Mr. Ostrander also blindly adopted Detective Moran's version of the facts. In this regard, it must be noted that Mr. Ostrander is a seasoned criminal defense attorney who has defended many federal criminal defendants in this Court. As such, I find it completely implausible that Mr. Ostrander would in essence blindly ignore Mr. Smith's claims and simply accept Detective Moran's statement to formulate his theory of defense.

Although both Mr. Smith and Ms. Hogan testified that they both advised Mr. Ostrander that Mr. Smith requested to speak with an attorney during questioning and that Mr. Smith had at least one potential alibi witness, Mr. Ostrander testified unequivocally to the contrary. I find Mr. Ostrander's testimony more credible. Obviously, Mr. Smith and Ms. Hogan have the most to gain in this matter in light of the sentence Mr. Smith received in this case, whereas Mr. Ostrander has no known reason to mislead the Court. Further underlying Ms. Hogan's credibility is her testimony that she can recall telling Mr. Ostrander that her son requested an attorney during his

11

interview or recall that her son may have had a potential alibi witness but she cannot remember

whether Mr. Smith admitted to her that he drove Mr. Hogan to the Speedy Food Mart, Island Food

Store, and/or Circle K. Further, Mr. Smith does not credibly explain why his mother would need

to advise Mr. Ostrander about his alleged denied request for an attorney or his alleged alibi witness

if, as Mr. Smith claims, he had already advised Mr. Ostrander about those matters. Additionally,

the Court cannot accept Mr. Smith's and Ms. Hogan's testimony when the record reveals that

during the trial Mr. Ostrander presented a defense theory consistent with Mr. Smith's statements

as outlined in Detective Moran's report. It is inconceivable that both Mr. Smith and Ms. Hogan,

who is a sworn law enforcement officer, would sit silent during the trial and allow Mr. Ostrander

to present a defense theory premised upon what they now assert are false statements taken in

violation of Mr. Smith's constitutional rights.[4]

Also, I find that Mr. Smith's testimony contradicts his signed *Miranda* warning waiver

form. (*See* Government Ex. No. 2.) The *Miranda* waiver form clearly informed Mr. Smith of all

his Constitutional rights, to specifically include his right to talk with an attorney prior to and

during questioning. Given the clear dictations of the *Miranda* warnings form, the Court finds Mr.

Smith's testimony that he signed the form after his alleged request for an attorney was denied is

not credible. Mr. Smith offered no plausible explanation as to why he signed the *Miranda* waiver

form after he was allegedly denied the opportunity to speak with a lawyer. Based upon his

---

[4]Notably, Mr. Smith's statements were also used against him in the state prosecution
for the attempted armed robbery of Bill's Market, and no motion to suppress Mr. Smith's
statements was filed in that case. The Court recognizes that there may have been reasons not
articulated in the present record for not pursuing a motion to suppress in the state case, but the
fact that statements were used in the state case against Mr. Smith, without protest, is certainly
relevant to this Court's credibility determination.

testimony, Mr. Smith might argue that he signed the *Miranda* waiver form because of Detective Moran's alleged threat of prosecution for withholding information. However, it is significant to note that Mr. Smith's Motion to Vacate (Dkt. No. 1 at 12-14), as well as his attached Affidavit (Dkt. No. 1 at 20-22), are completely silent as to any alleged threats by Detective Moran which may have induced Mr. Smith into signing the *Miranda* waiver form. Rather, the first and only time there is any reference in the record to an alleged threat by Detective Moran was during Mr. Smith's testimony.

Conversely, Detective Moran testified in no uncertain terms that: (1) prior to any substantive questioning, he advised Mr. Smith of his *Miranda* warnings and Mr. Smith signed the *Miranda* waiver form; (2) Mr. Smith made a number of admissions post-*Miranda*; and (3) the interview was terminated once Mr. Smith requested to speak with an attorney. Mr. Smith argues that Detective Moran's report is demonstrative of the fact that Mr. Smith was questioned prior to *Miranda* warnings and that Mr. Smith's request for an attorney was denied because the report memorializes that Detective Moran first came into contact with Mr. Smith at 2:47 a.m. and Mr. Smith was not given his *Miranda* warnings until 3:20 a.m. (Dkt. No. 16 at 3.) Not only is this argument unpersuasive, the detail in Detective Moran's report aptly represents Detective Moran's credibility. Certainly, if Detective Moran conducted himself in some nefarious manner, as alleged by Mr. Smith, then it would seem more plausible that Detective Moran would have reported that Mr. Smith was immediately advised of his *Miranda* warnings upon initial contact and that Mr. Smith never requested an attorney. However, the fact that Detective Moran documented the specific times, and documented that the interview was terminated when Mr. Smith eventually requested to speak with an attorney, is more indicative of the legitimacy of the interview. Thus, I find Detective Moran's testimony entirely credible.

13

Most telling is the fact that this case does not present a situation where a defendant's testimony merely conflicts with a law enforcement officer's testimony. Rather, in this case, Mr. Smith's testimony contradicts the testimony of both Detective Moran and Mr. Ostrander. Mr. Smith claimed that he was not properly *Mirandized* and requested to speak with an attorney prior to questioning, while Detective Moran asserted both in his report and in his testimony that Mr. Smith was properly *Mirandized* before questioning and that the interview was terminated when Mr. Smith requested to speak with an attorney. Further, Mr. Ostrander stated that Mr. Smith (and Ms. Hogan) never told him that he requested and was denied the opportunity to speak with an attorney during questioning. Mr. Smith also claimed that Detective Moran falsely reported that he admitted to driving to each of the stores. Detective Moran, however, asserted again both in his report and testimony that Mr. Smith stated that he drove to each of the alleged stores but had no knowledge about the robberies. Detective Moran's assertion was confirmed by Mr. Ostrander, who testified that Mr. Smith repeatedly acknowledged that he did drive to each of the stores, but that he had no knowledge regarding the robberies. For these reasons, I reject as not credible Mr. Smith's testimony and other evidence that he told Mr. Ostrander, namely,: (1) that his request to speak with an attorney was denied during Detective Moran's questioning, (2) Detective Moran falsely reported that Mr. Smith admitted that he drove to all of the alleged stores, and (3) that he had at least one alibi witness. Rather, I find both Mr. Ostrander and Detective Moran credible as to these issues. As such, I find that Mr. Smith told Mr. Ostrander that he answered Detective Moran's questions after he was advised of his *Miranda* warnings and admitted to Mr. Ostrander that he drove to each of the alleged stores but that he had no knowledge about any of the robberies.

In light of the Court's credibility determinations, Mr. Smith has not established either prong of the *Strickland* test. First, Mr. Smith has failed to demonstrate that Mr. Ostrander's representation fell below an objective standard of reasonableness. Given that Mr. Smith confirmed to Mr. Ostrander the legitimacy of his statements to law enforcement, a reasonable attorney in Mr. Ostrander's position would have determined it futile to pursue a motion to suppress Mr. Smith's statements and completely fruitless to investigate any potential alibi witnesses. Additionally, Mr. Smith failed to produce sufficient evidence[5] to suggest that his suppression claim, if brought, would have had a reasonable probability of success, and thus the result of his trial would have been different. *Strickland*, 466 U.S. at 694 (stating that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Given the Court's credibility assessment regarding the circumstances surrounding Mr. Smith's interview with Detective Moran, nothing in the record to suggests that if a suppression motion was filed on behalf of Mr. Smith there would have been a reasonable probability of success. Thus, having failed to demonstrate any deficient representation by Mr. Ostrander or resulting prejudice, Mr. Smith has failed to satisfy either prong of the *Strickland* test on his remaining ineffective assistance of counsel claims

---

[5] For example, Mr. Smith asserted that he had at least one alibi witness. However, Mr. Smith presented no such alibi witness for testimony for the Court's consideration during the evidentiary hearing. Additionally, it is notable that Mr. Smith was initially represented by retained counsel. Presumably, if Mr. Smith and Ms. Hogan were concerned about Detective Moran's alleged failure to allow Mr. Smith to call an attorney during the interview, such concern would have been expressed to Mr. Smith's original attorney in this matter.

regarding whether Mr. Ostrander should have pursued a motion to suppress or investigated potential alibi witnesses.[6]

### III. CONCLUSION

Based on the testimony presented at the evidentiary hearing and evidence on record, the Court finds that Mr. Smith has not met his burden in showing that Mr. Ostrander's representation was ineffective. Accordingly, the Court **RECOMMENDS** that Mr. Smith's Motion Pursuant to 28 U.S.C. §2255 to Vacate Conviction and Sentence (Dkt. No. 1) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 28th day of February, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[6] It should be noted that Mr. Smith's claim that Mr. Ostrander should have investigated potential alibi witnesses is not raised in Mr. Smith's Motion to Vacate. Rather, Mr. Smith stated in his Affidavit that he told "police that [he] had witnesses to where [he] was at the time the crimes were committed," and his attorney "never investigated [his] alibi witnesses ...." (Dkt. No. 1 at 22.) The only claims argued by Mr. Smith in his Motion to Vacate were regarding Mr. Ostrander's alleged failure to move to suppress statements, a failure to oppose the motion to sever, a failure to make motions in limine, a failure to make a proper closing argument, and a failure to make objections to the presentence report (Dkt. No. 1.)

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday
Counsel of Record