UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:05-cr-527-T-23MAP
8:08-cv-1086-T-23AEP

BRYAN TIMOTHYLEENARD SMITH,

_____/

**ORDER**

Bryan Timothyleenard Smith moves (Doc. 83) under 28 U.S.C. § 2255 to vacate his sentence of 140 years' imprisonment. The United States responds (Doc. 88). Also, the United States moves (Doc. 86) to dismiss-in-part Smith's claims as untimely, Smith responds (Doc. 92), the United States replies (Doc. 94), and Smith files (Doc. 95) a notice of supplemental authority.

**Background**

After an extended crime spree, Smith and his step-brother Jamail Hogan were charged with a carjacking and an armed robbery on November 26, 2005; the armed robbery of two convenience stores on November 27, 2005; and the attempted armed robbery of Bill's Market on December 2, 2005.

Smith and Hogan were tried separately. Smith waived opening argument and presented his defense through cross-examination of the government's witnesses. Although claiming to law enforcement that he drove Hogan and another man to the

scene of the robberies, Smith denied knowing that the robberies occurred. Smith's claim of "another man" was unsupported by the evidence.

The jury acquitted Smith of the charges relating to the November 26, 2005 carjacking and robbery but convicted Smith on each charge relating to the robberies on November 27, 2005, and December 2, 2005: conspiracy to obstruct commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One); Hobbs Act robbery in violation of 18 U.S.C. §§ 2 and 1951 (Counts Six and Nine); attempted Hobbs Act robbery of Bill's Market in violation of 18 U.S.C. §§ 2 and 1951 (Count Eleven); discharging a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(iii), and 924(c)(2) (Counts Seven and Twelve); and brandishing a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(ii), and 924(c)(2) (Count Ten).

Because the store manager died after a gunshot wound received during the attempted robbery at Bill's Market, Smith's offense level was 43, yielding an advisory guidelines range of life imprisonment. Smith was sentenced to the statutory maximum of 240 months' imprisonment on each of the four Hobbs Act offenses, the statutory minimum of 120 months on the first Section 924(c) offense, and the statutory minimum of 300 months on the second and third Section 924(c) offenses, all terms consecutive, for a total of 1,680 months (140 years). The Eleventh Circuit affirmed Smith's convictions and sentences.

**Procedural history**

Smith's post-conviction claims encompass three Section 2255 motions: an initial motion to vacate, a successive motion to vacate, and an amended motion to vacate. Although only the amended motion to vacate (Doc. 83) remains, the amended motion incorporates unresolved claims from the initial and successive motions. A more detailed history follows.

On June 4, 2008, Smith timely moved (Doc. 1) with the assistance of counsel to vacate his sentence. A July 20, 2011 order (Doc. 12) dismisses several claims and refers the remaining two claims to the magistrate judge for an evidentiary hearing. After hearing evidence (Doc. 15) and receiving supplemental briefs (Doc. 16, Doc. 18), the magistrate judge entered (Doc. 21) a report recommending the denial of the motion to vacate. Neither side filed an objection. A March 30, 2012 order (Doc. 22) adopts the report and recommendation, denies the motion to vacate, and directs entry of judgment in favor of the United States.

Not notified by his counsel that judgment was entered, Smith filed (Doc. 25) a *pro se* motion to compel a decision on his claims. A July 5, 2012 order (Doc. 26) denies the motion. But after additional filings revealed that counsel abandoned Smith, a September 25, 2013 order (Doc. 54) vacates the judgment, re-opens the case, and allows both sides to file objections to the report and recommendation. Also, the order permits Smith to move under Rule 60(b), Federal Rules of Civil Procedure, to reconsider one of the several claims dismissed before the evidentiary hearing.

Accordingly, Smith's counsel filed objections (Doc. 55) and a Rule 60(b) motion (Doc. 56). The United States responded (Doc. 59, Doc. 60). Not satisfied with counsel's arguments, Smith filed (Doc. 63) a *pro se* motion to amend.

Before Smith's initial motion to vacate was resolved, the Federal Defender on Smith's behalf filed with the Eleventh Circuit an application for leave to file a second or successive Section 2255 motion to allege a claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015). While the application was pending, the Federal Defender filed in district court a "placeholder" motion to vacate, which was docketed as a new case (Case No. 8:16-cv-1772-T-23AEP). On July 6, 2016, the Eleventh Circuit granted-in-part (Doc. 72) Smith's application for leave to file a second or successive Section 2255 motion.

A September 30, 2016 order (Doc. 73) explains that because Smith's initial motion to vacate pends, Smith required no permission to file a second or successive motion and Smith's *Johnson* claim is not subject to the rules governing a second or successive motion. The order consolidates Smith's two Section 2255 cases, denies as moot all pending motions, permits Smith's counsel to withdraw, appoints new counsel, and directs counsel to proceed in his discretion.

On April 28, 2017, Smith filed (Doc. 83) an amended motion to vacate. The amended motion incorporates claims alleged in Smith's initial motion to vacate (Doc. 1) and the Federal Defender's *Johnson* claim (Doc. 74). In addition, the

amended motion to vacate raises new claims.  The initial claims, the *Johnson* claim, and the new claims are addressed in turn.

## Initial claims

**1.    Failure to file a motion to suppress**

Smith argues (Doc. 1 at 13–15) that counsel performed deficiently by failing to investigate the circumstances surrounding Smith's confession and by failing to move to suppress the confession.  The parties agree (Doc. 83 at 6, Doc. 88 at 11) that this claim is governed by the magistrate judge's report and recommendation (Doc. 12), Smith's objections (Doc. 55), and the United States' response (Doc. 59).

To demonstrate that counsel was constitutionally ineffective, Smith must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the movant.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

"Counsel has a constitutional, independent duty to investigate and prepare a defense strategy."  *Williams v. Allen*, 598 F.3d 778, 792 (11th Cir. 2010).  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Williams*, 598 F.3d at 793 (internal quotation marks omitted).  "[A] court must consider not only the quantum of evidence already known to counsel, but

also whether the known evidence would lead a reasonable attorney to investigate further." *Williams*, 598 F.3d at 793 (internal quotation marks omitted).

Because a court "weigh[s] heavily the information provided by the defendant," *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010), the July 20, 2011 order (Doc. 12 at 10–11) submits Smith's claim to an evidentiary hearing to determine the facts, if any, Smith told his trial counsel about his confession. The magistrate judge heard testimony from four witnesses: Smith, Smith's mother, Smith's trial counsel, and Detective Edwin Moran of the Polk County Sheriff's Office, who elicited Smith's confession.

As recounted in more detail in the magistrate judge's thorough report (Doc. 21 at 4–8), Smith testified that after Detective Moran confronted him "with certain items of evidentiary value," Smith asked to speak to an attorney and removed from his wallet a card for a pre-paid legal service. Moran refused to allow Smith to speak with an attorney and threatened Smith with jail time for withholding information. As a result, Smith signed a *Miranda* waiver form. According to Smith, he told both counsel and his mother that he was denied an attorney. Smith's mother likewise testified that she told counsel her son was denied an attorney.

By contrast, Detective Moran testified that he began questioning Smith only after Smith signed the *Miranda* waiver at 3:20 a.m. At 5:25 a.m., and after Smith admitted to driving to each of the robberies, Smith asked if he could go home.

Moran told Smith he could not leave, Smith requested an attorney, and Moran ended the interview.

Smith's trial counsel testified that neither Smith nor his mother reported that Smith was denied an attorney. In fact, Smith acknowledged that he received a *Miranda* warning, Smith confirmed there were no inaccuracies in Detective Moran's report, and Smith admitted to counsel, more than once, that he drove to the scene of each robbery.

Undertaking a detailed analysis (Doc. 21 at 10–15), the magistrate judge explained that Detective Moran's and counsel's account was more credible than Smith's (and his mother's) version of events. And based on what counsel knew about Smith's confession, a reasonable attorney would have determined that it was futile to file a motion to suppress.

Notably, Smith in his objection raises no challenge to the magistrate judge's well-supported credibility findings. Smith instead argues (Doc. 55 at 2) that even if he told counsel no detail about his confession, counsel should have deduced that the confession was involuntary based on certain "objective" facts.

First, Smith maintains that Detective Moran's report documents a thirty-three-minute custodial interrogation between 2:47 a.m. and 3:20 a.m. (when Smith signed the *Miranda* waiver). In particular, Smith points to the report's statements that Moran "made contact" with Smith at 2:47 a.m. and that Moran "was interviewing" Smith at 2:47 a.m. (Case No. 8:05-cr-527-T-23AEP, Doc. 45-2 at 2–3). However,

both statements are followed by a more detailed timeline, which states that after Moran learned Smith was waiting in a conference room, he "made contact" with Smith at 3:18 a.m. (Doc. 45-2 at 5)

Reading the report in its entirety and in context, a reasonable attorney would conclude that Smith was initially greeted at 2:47 a.m. and placed in a conference room and that Smith's interview began at 3:18 a.m., only two minutes before he signed the *Miranda* waiver.[1] And even if a reasonable attorney would suspect that Moran questioned Smith for thirty-three minutes before administering a *Miranda* warning, Smith identifies no fact to support his conclusory assertion that the thirty-three-minute interview amounted to an unlawful custodial interrogation. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (observing that a *Miranda* warning is not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect").

Smith next argues (Doc. 1 at 13–14, 20–22) that counsel should have realized that Smith's statements were "created by the police, under false pretenses." Smith alleges that the Polk County Sheriff's Office called him to the station on a pretext — asking him to pick up his impounded car — and falsely claimed that Smith initiated the call. Smith maintains that counsel could have discovered the ruse by reviewing Smith's phone records (which show no outgoing call) and by obtaining the car's

---

[1] Both Smith and Moran testified to that effect at the evidentiary hearing. Moran testified that he initially met Smith at 2:47 a.m. and had Smith moved to a conference room for questioning. (Doc. 21 at 6–7) Smith testified that after he arrived at the station he was placed in a room by himself and fell asleep. (Doc. 21 at 4)

registration (which shows that the impounded car was registered to Smith's mother, suggesting that she would have been the proper person to retrieve the car). But as the July 20, 2011 order explains (Doc. 12 at 3 n.3), Smith fails to provide the phone records and thus fails to demonstrate prejudice. And even assuming that the Sheriff's Office tricked Smith into attending an interview, Smith identifies no valid basis for suppression. *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1363 (11th Cir. 1984) ("[T]he police's use of a trick alone will not render a confession involuntary").

As a last resort, Smith argues that because his confession provided the sole evidence of his guilt, counsel risked nothing by moving to suppress the statement. However, counsel is not ineffective for failing to raise a non-meritorious issue, *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001), and Smith identifies no fact or law to demonstrate that a motion to suppress would have been granted. *Hubbard v. Haley*, 317 F.3d 1245, 1253 (11th Cir. 2003) ("Among the factors we must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police.")

Finally, to the extent Smith argues that counsel could have more vigorously challenged the confession at trial, counsel reasonably relied on an alternative defense strategy: conceding Smith's presence at the robberies and arguing that Smith lacked the requisite intent to commit robbery. *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) ("[C]ounsel's reliance on particular lines of defense to the exclusion

of others — whether or not he investigated those other defenses — is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.") Indeed, Smith takes no issue with counsel's chosen defense — a defense that resulted in Smith's acquittal on several charges.

**2.     Failure to investigate alibi witnesses**

Smith briefly alleges (Doc. 1 at 22) that counsel failed to investigate potential alibi witnesses. At the evidentiary hearing, Smith and his mother testified that they informed counsel about potential witnesses.

The magistrate judge rejected Smith's and his mother's testimony. Also, the magistrate judge noted that Smith failed to present any witness at the evidentiary hearing. Finally, the magistrate judge determined that reasonable counsel would conclude that investigating an alibi witness was futile in light of Smith's admissions that he drove to the location of each robbery. (Doc. 21)

Smith files no objection (*see* Doc. 55), and he concedes (Doc. 83 at 6) abandoning the claim.

**3.     Failure to object to the Pre-Sentence Report**

Smith maintains (Doc. 1 at 17–18) that counsel performed deficiently by failing to object to the Pre-Sentence Report's statement that the manager at Bill's Market "died as a result of the gun shot." (PSR at ¶ 24) Because the robbery resulted in a death, the guidelines yielded an advisory range of life imprisonment.

The July 20, 2011 order (Doc. 12 at 9–10) dismisses the failure-to-object claim because Smith demonstrated no prejudice. As the order explains, counsel's failure to object might have eliminated the need for the medical examiner's testimony, but the United States could have presented the medical examiner's testimony. And Smith presented no evidence to suggest that the clerk died from another cause.

The September 25, 2013 order (Doc. 54 at 3) allows Smith to move for reconsideration. The parties agree (Doc. 83 at 6, Doc. 88 at 12) that Smith's failure-to-object claim is addressed by Smith's Rule 60(b) motion (Doc. 56), the United States' response (Doc. 60), and Smith's *pro se* motion to amend (Doc. 63).

Smith continues to speculate that the clerk might have died from other causes, and he argues that counsel failed to investigate the cause of death. But Smith alleges no "reasonably specific, non-conclusory fact" to suggest that the death was caused by anything other than the gunshot wound inflicted during the robbery. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotation marks omitted). Smith thus fails to show prejudice.

Smith newly argues (Doc. 56 at 6–7) that under *Alleyne v. United States*, 570 U.S. 99 (2013), a jury must find a fact that increases a mandatory minimum sentence. However, *Alleyne* does not apply retroactively on collateral review, *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014), and counsel is not ineffective for failing to anticipate a change in law. *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).

Smith raises other conclusory arguments, which were not included in the initial motion to vacate (Doc. 1) and which are not incorporated in the amended motion to vacate (Doc. 83). Even if Smith succeeds in raising any non-conclusory claims, the claims lack merit.[2]

### *Johnson* claim

The jury convicted Smith of three violations of Section 924(c)(1)(A), which imposes a mandatory sentence when a defendant uses a firearm during a "crime of violence." Section 924(c)(3) defines "crime of violence" as a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection (A) is commonly known as the "use-of-force" clause, and subsection (B) is known as the "risk-of-force" clause. *United States v. St. Hubert*, 883 F.3d 1319, 1327 (11th Cir. 2018). Citing *Johnson v. United States*, 135 S. Ct. 2551 (2015), Smith argues that the risk-of-force clause is unconstitutionally vague.

After the parties completed briefing, the Eleventh Circuit held that the risk-of-force clause is not unconstitutionally vague. *Ovalles v. United States*, 905 F.3d 1231,

---

[2] For example, Smith asserts (Doc. 56 at 5) in passing that counsel failed "to make even cursory arguments regarding § 3553(a) factors [or] proportionality," but the sentencing transcript (Doc. 129 at 19–23) reveals that counsel addressed both proportionality and the § 3553(a) factors. In addition, Smith incorrectly assumes that his acquittal of felony-murder in state court precludes a federal sentence that considers the felony murder. *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006) ("[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence") (internal quotation marks omitted).

1253 (11th Cir. 2018). And, as the United States correctly argues, even if the risk-of-force clause is invalid, Smith's predicate offenses of Hobbs Act robbery and attempted Hobbs Act robbery categorically qualify as "crimes of violence" under the use-of-force clause. *St. Hubert*, 883 F.3d at 1328–1334.

### New claims

**1.** *Rosemond* **claim**

In the amended motion to vacate, Smith argues for the first time that his three Section 924(c)(1)(A) convictions are invalid under *Rosemond v. United States*, 134 S. Ct. 1240 (2014). Smith contends that *Rosemond* significantly limits aiding-and-abetting liability under Section 924(c)(1)(A) by requiring the government to prove the defendant possessed advance knowledge that the predicate offense would include the use of a gun.

The United States concedes that *Rosemond* establishes a new substantive rule retroactively applicable to cases on collateral review. Nonetheless, the United States persuasively argues (Doc. 86 at 15–17) that the claim is untimely.

The Anti-Terrorism and Effective Death Penalty Act creates for a motion to vacate a one-year limitation, which runs from the latest of four specified dates, including the date on which the judgment of conviction becomes final, 28 U.S.C. § 2255(f)(1), and the date the Supreme Court first recognizes a new right, 28 U.S.C. § 2255(f)(3). Smith filed his *Rosemond* claim on April 28, 2017, nine years after his conviction was final and three years after the Supreme Court's decision. Smith does

not suggest that the claim relates back under Rule 15(c), Federal Rules of Civil Procedure, to a timely claim. And although Smith notes (Doc. 92 at 3) that he was proceeding without counsel when *Rosemond* was decided, Smith's *pro se* status, standing alone, does not warrant equitable tolling. *Johnson v. United States*, 544 U.S. 295, 311 (2005); *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 969 (11th Cir. 1997).

**2.      Failure to object to the calculation of the Section 924(c) sentences**

Smith argues that counsel performed deficiently by failing to challenge the calculation of his three Section 924(c)(1)(A) sentences. Count Seven (discharging a firearm), Count Ten (brandishing a firearm), and Count Twelve (discharging a firearm) carry a mandatory minimum sentence of ten years, seven years, and ten years, respectively. But for a second or subsequent Section 924(c)(1)(A) conviction, Section 924(c)(1)(C)(i) imposes a mandatory minimum sentence of twenty-five years. As a result, Smith was sentenced to ten years on Count Seven and twenty-five years on Counts Ten and Twelve.

Citing the "rule of lenity" as applied in *United States v. Chapman*, 851 F.3d 363, 373–374 (5th Cir. 2017), Smith asserts that the Section 924(c)(1)(A) conviction with the lowest mandatory minimum sentence should be designated the first conviction. Smith maintains that his first conviction should have been Count Ten (a seven-year sentence) instead of Count Seven (a ten-year sentence).

Assuming that the claim relates back under Rule 15(c), the claim lacks merit. At the time of Smith's sentencing, no controlling precedent required designation of

the Section 924(c)(1)(A) conviction with the lowest mandatory minimum sentence as the first conviction. Failing to anticipate a change in law does not constitute ineffective assistance. *Ardley*, 273 F.3d at 993 ("In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel.").

### 3. Failure to object to the consecutive Hobbs Act sentences

Smith argues that counsel performed deficiently by failing to object to consecutive sentences on the four Hobbs Act convictions. Assuming again that the claim is timely under Rule 15(c), Smith fails to demonstrate prejudice.

Under 18 U.S.C. § 3584, a court retains discretion to impose concurrent or consecutive sentences, and in exercising that discretion, a court must consider the § 3553(a) factors. At Smith's sentencing, the court considered the § 3553(a) factors and imposed consecutive sentences. (Case No. 8:05-cr-527, Doc. 129 at 25–28) The Eleventh Circuit affirmed on direct appeal the reasonableness of Smith's sentence. Accordingly, Smith fails to demonstrate that counsel's objection to consecutive sentences would have achieved a different result.

### Conclusion

The United States' motion to dismiss (Doc. 86) is **GRANTED-IN-PART** and Smith's *Rosemond* claim is **DISMISSED** as untimely. The motion to dismiss is otherwise **DENIED AS MOOT**.

The magistrate judge's report and recommendation (Doc. 21) remains **ADOPTED**. The remaining claims alleged and incorporated in the amended motion to vacate (Doc. 83) are **DENIED**. The clerk must enter a judgment in favor of the United States and **CLOSE** the case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

To merit a certificate of appealability, Smith must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. 28 U.S.C. § 2253(c)(2); *Lambrix v. Sec'y, Fla. Dep't of Corrs.*, 851 F.3d 1158, 1169 (11th Cir. 2017). Because Smith fails to show that reasonable jurists would debate the merits of the procedural issues or the merits of the claims, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Smith must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on November 2, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE